# Pennsylvania Labor Relations Board, Appellant, *v.* Three Chefs, Inc.

Argued April 23, 1963. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

Robert D. Ronco, Assistant Attorney General, with him Raymond Kleiman and James F. Wildeman, Assistant Attorneys General, and David Stahl, Attorney General, for Pennsylvania Labor Relations Board, appellant.

Richard Rosenbleeth, with him Samuel P. Lavine, and Steinberg, Steinbrook, Lavine & Gorelick, for appellee.

OPINION BY MR. JUSTICE ROBERTS, July 2, 1963:

This appeal arises from the dismissal by the Court of Common Pleas No. 5 of Philadelphia County of a complaint brought before, and sustained by, the Pennsylvania Labor Relations Board (Board). A charge was filed with the Board in December, 1960, by the Waiters and Waitresses Union, Local 301, Hotel and Restaurant Workers and Bartenders International Union, AFL-CIO (Union), alleging that appellee Three Chefs, Inc. (Employer), a restaurant, had engaged in unfair labor practices, as defined in Section 6(1)(a) and (c) of the Pennsylvania Labor Relations Act (Act),[1] by interfering with the rights of self-organiza-

---

[1] Act of June 1, 1937, P. L. 1168, §6, as amended, 43 P.S. §211.6 (1952). The pertinent portions of this section provide:

"(1) It shall be an unfair labor practice for an employer— (a) To interfere with, restrain or coerce employes in the exercise of the rights guaranteed in this act: . . . (c) By discrimination in regard to hire or tenure of employment, or any term or condition of employment to encourage or discourage membership in any labor organization: . . . (2) It shall be an unfair labor practice for a

tion of its employees and discriminatorily discharging employees for union activity. The Employer denied the charges and countercharged that the Union itself had committed an unfair labor practice by intimidating employees into signing union membership cards in violation of §6(2)(a),[2] and urged that the complaint of the Union be dismissed pursuant to §10.1.[3]

The Board, on June 2, 1961, found that the Employer's offer of union wages to striking workers who would return to work without union representation was an unfair labor practice under §6(1)(a), and ordered the posting of a notice to employees.[4] The Board also found that there was no discriminatory discharge of employees. However, no finding was made with respect to the employer's defense of unfair labor practices by the Union. The Employer's exceptions to the

---

labor organization, or any officer or officers of a labor organization, or any agent or agents of a labor organization, or any one acting in the interest of a labor organization, or for an employe or for employes acting in concert—(a) To intimidate, restrain, or coerce any employe for the purpose and with the intent of compelling such employe to join or to refrain from joining any labor organization, or for the purpose or with the intent of influencing or affecting his selection of representatives for the purposes of collective bargaining. . . ."

[2] Quoted in note 1 supra.

[3] Act of June 1, 1937, P. L. 1168, added June 9, 1939, P. L. 293, §2, 43 P.S. §211.10.1 (1952). This section provides:

"Whenever the board shall find, as part of its findings of fact in any proceeding before it, that the party or parties filing charges of unfair labor practices upon which the complaint was based have engaged in an unfair labor practice (as defined in section six) in connection with or as part of the actions forming the basis of the complaint, such findings shall constitute a complete defense to the complaint, and no order shall issue thereon against the person charged."

[4] The notice would inform employees that the Employer will not interfere with the employees in the exercise of their right to self-organization and that all employees are free to join any labor organization.

nisi decision were dismissed and the order made final on August 7, 1961. (Exceptions filed by the Union were also dismissed.) From this disposition, the Employer appealed to the court of common pleas. Argument was heard on November 27, 1961, and on March 30, 1962, the appeal was sustained and the complaint dismissed. Hence, this appeal by the Board.

Prior to the institution of this unfair labor practice charge before the Board, the Employer had filed a complaint in equity (November, 1960) to enjoin the Union picketing. A preliminary injunction was granted on April 19, 1961, and a permanent injunction on November 28, 1961. *Three Chefs, Inc. v. Waiters' and Waitresses' Union, Local 301, A. F. of L.*, 28 Pa. D. & C. 2d 257 (C.P. Phila. Co. 1962). The chancellor there held that the picketing had as its purpose the unlawful coercion of the employer to compel the employees to join the Union. No appeal was taken from that decision.

Subsequently, after this appeal was taken, the Board and the Employer entered into the following written stipulation: "Since the decision rendered . . . [in the equity proceeding], there is no dispute or controversy between Three Chefs, Inc. and its employees. Accordingly, the parties hereto . . . stipulate and agree that the within entitled action be terminated as follows: 1. The Appeal by Three Chefs, Inc., to the Court of Common Pleas in the within case shall be marked withdrawn. 2. The Court shall recall its opinion and order filed in the within case. 3. The Appeal from the order of the Court in the within entitled matter to the Supreme Court of Pennsylvania shall be withdrawn. The foregoing Stipulation shall have no effect until and unless the same has been approved by the Court." The court below determined that it lacked the power to recall its opinion and order and, therefore, refused to approve the stipulation.

The Employer has filed a motion to dismiss under Supreme Court Rule 41 on the ground that the appeal is moot, in that the labor dispute has been settled. The motion was argued at the time of oral argument on the merits and will be disposed of here.

The dispute here is whether or not the Employer could properly be found guilty of an unfair labor practice. The fact that picketing has ended and employer-employee relations apparently have calmed is not necessarily determinative of this issue. If the Employer did commit an unfair practice, as found by the Board, it would be required to post a notice to its employees as ordered by the Board. As matters now stand, the court of common pleas has determined that although the Employer's conduct might have been an unfair practice, the complaint should have been dismissed under Section 10.1 of the Act. The Board contends otherwise and insists that its order be enforced. Apparently, this controversy would have become moot if the Employer had complied with the order. The actions required in the stipulation of settlement would also have achieved that result by making the Board's order operative. However, these events did not occur. Therefore, the question of unfair labor practice remains alive, and the motion to dismiss must be denied.

We turn now to the merits of the controversy. Section 9(b) of the Act [5] provides for appellate review of a final order of the Board by the court of common pleas. In *Pennsylvania Labor Relations Board v. Merion Memorial Park*, 406 Pa. 562, 563-64, 178 A. 2d 553, 555 (1962), this Court restated the scope of such review: "Under Section 9(b), the findings of the Board are conclusive if supported by substantial and legally credible evidence. Such evidence has been defined as that which to a reasonable mind is adequate to sup-

---

[5] 43 P.S. §211.9(b).

port a conclusion. Conjecture is no substitute therefor and a mere scintilla is insufficient: P.L.R.B. v. Kaufmann Dept. Stores, Inc., 345 Pa. 398, 29 A. 2d 90 (1942). Our review involves a determination of whether or not the board's findings were supported by substantial and legally credible evidence, *and whether the conclusions deduced therefrom were reasonable and not capricious*: P.L.R.B. v. Elk Motor Sales Co., 388 Pa. 173, 130 A. 2d 501 (1957)." (Emphasis in the original.)

The Board contends that the lower court erroneously substituted its own findings and conclusions based on the equity proceeding previously before that court. To the contrary, the court below accepted the findings of the Board that the Employer had engaged in conduct which constituted an unfair labor practice. However, the court concluded that the Board had acted unreasonably in failing to sustain the Employer's defense that the Union had also committed an unfair labor practice. This issue is nowhere discussed in the Board's nisi decision (although raised as new matter in the Employer's answer to the complaint) and is treated in the final order with the statement that the Board ". . . is of the opinion that all the exceptions [apparently of both Employer and Union] are without merit and should be dismissed." The court found, upon testimony uncontradicted and undenied in the record, that the two original union employees had intimidated other employees into signing union membership cards and that this conduct was an absolute defense to the complaint under Sections 6(2)(a) and 10.1 of the Act.[6] While the court below made reference to the equity proceeding and to its finding there of unlawful coercion by the Union, the result it reached here does not depend upon the equity determination. There is ample undisputed testimony in the present record of the pro-

---

[6] Quoted in notes 1 and 3 supra.

ceeding before the Board to support the court's conclusion, and which the Board should not reasonably have ignored.

The Board further argues that even assuming an unfair labor practice by the Union, such practice was not "in connection with or as part of the actions forming the basis of the complaint" as required by Section 10.1. This contention is without merit. The complaint was based upon charges of discriminatory discharge of union employees and interference with the employees' right to self-organization. Necessarily involved were the Union membership cards and the manner in which the signatures were procured. The Employer was charged with improperly obtaining repudiation of the very same cards improperly obtained by the Union initially, all of which occurred within a period of a few days.

Therefore, §10.1 applies, and the court below properly dismissed the complaint.

Motion to dismiss appeal denied. Order affirmed.